```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANTHONY NELSON,                                        :    INDEX NO.
                                                       :    ECF CASE
                              Plaintiff,               :
                                                       :
              - against –                              :    JURY TRIAL DEMANDED
                                                       :
THE CITY OF NEW YORK, a municipal entity,              :
NYPD OFFICER DESHAWN EDMONDS, NYPD                     :
OFFICER SOLOMON, NYPD SGT. ANIL GEORGE,                :    COMPLAINT
and NYPD OFFICERS "JOHN DOES 1-5",                     :
                                                       :
                              Defendants.              :
                                                       :
------------------------------------------------------------------------X
```

Plaintiff ANTHONY NELSON., by his attorneys, STECKLOW AND THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I. JURISDICTION

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

## III. VENUE

2. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## IV. JURY DEMAND

3. Plaintiff ANTHONY NELSON. respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

4. At all times relevant herein Plaintiff Anthony Nelson was a resident of the County of the Bronx, State of New York.

5. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

6. Defendant City of New York maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, Defendant City of New York.

7. Defendant NYPD Officer DESHAWN EDMONDS at all times here relevant was a member of the New York City Police Department, acting under color of state law and/or pursuant to the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York.

8. Defendant NYPD OFFICER SOLOMON at all times here relevant was a member of the New York City Police Department, acting under color of state law and/or pursuant to the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York.

9. Defendant NYPD SGT. ANIL GEORGE at all times here relevant was a member of the New York City Police Department, acting under color of state law and/or

pursuant to the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York.

10. Defendant New York City Police Officers "John Doe 1-5", (collectively along with Defendant Police Officer DESHAWN EDMONDS, "The Defendant Police Officers") at all times here relevant were members of the New York City Police Department acting under color of state law and/or pursuant to the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York.

11. Plaintiff will amend this complaint to name the Defendant Police Officers "John Does 1-5" as their identities can be established to a reasonable certainty.

## VI. FACTS COMMON TO ALL CLAIMS

12. Plaintiff ANTHONY NELSON brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, guaranteed by the Constitution of the United States.

13. On August 3, 2013, at or around 800 P.M., the Plaintiff was in the hallway in the apartment building where he lived, near his apartment, when he was unlawfully arrested, searched and subjected to excessive force by defendants NYPD Officer Deshawn Edmonds, NYPD Officer Solomon, and NYPD Sergeant George (collectively, the "Named Officers"), and one or more other officers, NYPD OFFICERS John Doe 1-4 (the "John Doe Officers; and, with the Named Officers, the "Defendant Officers").

14. Without probable cause, the Defendant Officers stopped and seized the Plaintiff, preventing him from leaving the location or returning to his apartment.

15. The Defendant Officers unlawfully searched the Plaintiff, including inside his clothing.

3

16. When the Plaintiff disagreed, the Defendant Officers arrested the plaintiff.

17. The Defendant Officers used excessive force in making the arrest.

18. The Plaintiff did not resist arrest.

19. Nevertheless, the Defendant Officers struck the Plaintiff with their hands and with a baton or club.

20. One of the Defendant Officers grabbed the Plaintiff by his throat.

21. The Defendant Officers struck the Plaintiff on the chest, left wrist, and head, causing him to suffer injuries including contusions and abrasions and cuts to these areas.

22. The Plaintiff was placed in handcuffs, which were tight, caused pain and left a mark.

23. The Plaintiff was taken to PSA 8, then to the 47th Precinct, and then to Bronx Central Booking, arriving there at approximately 6:00 AM.

24. The Plaintiff was held at Central Booking until approximately 1:00 PM on August 5, 2013.

25. While in custody the Plaintiff was improperly searched several more times.

26. The Plaintiff was falsely charged with offenses which he did not commit.

27. Plaintiff was held in unlawful confinement and caused to suffer physical, mental and emotional injuries as a result of the Defendant Police Officers.

28. Plaintiff is entitled to both compensatory and punitive damages.

29. In communicating the information of what had occurred, the officers, including defendant EDMONDS and other NYPD officers, made false statements to the District Attorney's office, including statements that were part of the criminal complaint filed against Mr. Nelson.

30. These false statements were presented with the knowledge that they were false, that the District Attorney's office would rely upon them, and that the statements could influence a jury.

31. Due to these false statements being filed, the District Attorney filed criminal charges against Mr. Nelson and he was forced to defend himself against these charges.

32. As a result of the incident, arrest, and false statements the Plaintiff was forced to appear in court on more than five occasions and eventually, on July 9, 2014, this case was dismissed.

FIRST CLAIM FOR RELIEF

DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

33. Plaintiff ANTHONY NELSON repeats each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

34. All of the aforementioned acts of the defendants were carried out under the color of state law, and deprived the Plaintiff of his Constitutional rights.

35. On the date of his arrest, there were no outstanding warrants for the arrest of the Plaintiff, nor any probable cause for his arrest.

36. The Defendant Officers and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

37. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

38. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF

## FALSE ARREST UNDER 42 U.S.C. § 1983

39. Plaintiff ANTHONY NELSON repeats each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

40. The Plaintiff was seized by the Defendants, without a warrant, against his will, and without justification.

41. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

42. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF

## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

43. Plaintiff ANTHONY NELSON repeats each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

44. The Defendant Officers administered force upon the Plaintiff in the absence of need for such force, and in excess of any force reasonably required.

45. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

46. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## FABRICATION OF EVIDENCE UNDER 42 U.S.C. §1983

47. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

48. The defendants unlawfully fabricated evidence for use in the arrest and prosecution of the plaintiff.

49. The defendants falsely stated that thy observed the plaintiff smoking marijuana.

50. The defendants falsely stated that they observed the plaintiff destroy a marijuana cigarette by eating it.

51. The defendants falsely stated that they found further marijuana on his person.

52. Based on the foregoing false statements, the defendants sought to charge the plaintiff with a felony.

53. Based on the foregoing false statements, the defendants sought to hold the plaintiff in custody rather than grant a DAT or bail.

54. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

55. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FRO RELIEF

## UNLAWFUL SEARCH UNDER 42 U.S.C. §1983

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

57. The defendant officers searched the plaintiff without probable cause.

58. Because the search was without probable cause, it was unreasonable as a matter of law.

59. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

60. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF

## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

61. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

62. Each of the individual Defendant Police Officers had an affirmative duty to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights.

63. Each of the individual Defendant Police Officers failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by the Defendant Police Officers' affirmative conduct.

64. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

65. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983

### A. THE PRACTICE AND CUSTOM OF THE NEW YORK CITY POLICE DEPARTMENT OF PERMITTING ITS OFFICERS TO ENGAGE IN POLICE BRUTALITY AND USE OF EXCESSIVE FORCE

66. On information and belief, Defendant CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking extraordinary and unjustified uses of force against persons and persons' property.

67. In doing so, Defendant CITY OF NEW YORK has failed to act to remedy this ongoing practice where other municipalities, faced with notice of similar issues, have taken meaningful affirmative steps to curb said tendencies among their own police officers.

68. The non-governmental organization Human Rights Watch conducted a study examining common obstacles to accountability for police abuse in fourteen large cities, including Atlanta, Boston, Chicago, Detroit, Indianapolis, Los Angeles, Minneapolis, New

Orleans, New York, Philadelphia, Portland, Providence, San Francisco, and Washington, D.C.[1]

69. Research for this report was conducted over two and a half years, from late 1995 through early 1998.

70. The report stated: "The barriers to accountability are remarkably similar from city to city. Shortcomings in recruitment, training, and management are common to all. So is the fact that officers who repeatedly commit human rights violations tend to be a small minority who taint entire police departments but are protected, routinely, by the silence of their fellow officers and by flawed systems of reporting, oversight, and accountability. Another pervasive shortcoming is the scarcity of meaningful information about trends in abuse; data are also lacking regarding the police departments' response to those incidents and their plans or actions to prevent brutality. Where data do exist, there is no evidence that police administrators or, where relevant, prosecutors, utilize available information in a way to deter abuse."

71. The report documented that the official response of the New York City Police Department and the City of New York, to credible, persistent reports of abuse was to deny the existence of the problem.

---

[1] "Shielded from Justice: Police Brutality and Accountability in the United States," Human Rights Watch, June 1998. Report incorporated by reference herein and available online at http://www.columbia.edu/itc/journalism/cases/katrina/Human%20Rights%20Watch/uspohtml/toc.htm.

72. The report documented that the New York City Police Department, and the City of New York failed to discipline officers in all but 1% of incidents in which complaints were filed with the Civilian Complaint Review Board.

73. Upon information and belief, the report was presented to Mayor Rudy Giuliani of the City of New York.

74. Upon information and belief, the Mayor denounced the report without reading it.

75. Upon information and belief, Kenneth Roth, then Executive Director Human Rights Watch wrote in an open letter to the Mayor on July 14, 1998: "Rather than engage in a serious discussion of the problem of police brutality in New York City, you attacked those who raised the issue -- apparently without even reading the advance copy of the report we had sent you."

76. Upon information and belief, Defendant City of New York has been, and continues to be, aware of the prevalence of the problem of officers of the New York City Police Department engaging in excessive force, but has failed to take action to remedy the problem.

77. Upon information and belief, Defendant City of New York continues to resist collection and disclosure of data concerning the prevalence of police brutality, choosing to conceal the problem from the public in order to continue its policy of acquiescence in such practices without fear of public or political backlash.

78. Upon information and belief, Defendant City of New York continues to condone or otherwise permit shortcomings and deficiencies in the New York City Police Departments' recruitment, training, and management practices that allow the practice and

custom of the use of excessive force and police brutality by the police officers of the New York City Police Department to continue.

79. Upon information and belief, Defendant City of New York continues to condone or otherwise permit flawed and/or deficient systems of reporting, oversight, and accountability that allow the practice and custom of the use of excessive force and police brutality by the police officers of the New York City Police Department to continue.

### B. DEFENDANT POLICE OFFICERS' VIOLATION OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION UNDER THE U.S. CONSTITUTION'S 14TH AMENDMENT AND DEFENDANT CITY OF NEW YORK'S NOTICE OF SAME

80. On March 1, 2010, the New York Times published an Op-Ed piece entitled "Watching Certain People," wherein the author cited to New York City Police Department Statistics showing that of the 2,798461 stops made by police officers during the years 2004 through 2009, African-American men accounted for 1,444,559 of those stops, and Hispanics accounted for 843,817 of those stops, or 51.6 percent and 30.1 percent, respectively. The vast majority of those stopped, 88.2 percent, were not guilty of any crime.[2]

81. On February 22, 2011, the New York Daily News published an article citing New York Police Department stops for the year 2010, which numbered 601,055. This figure

---

[2] Herbert, Robert, "Watching Certain People," New York Times, March 1, 2010Seattle Post-Intelligencer, February 28, 2008. Article incorporated herein by reference and available online at:
http://www.nytimes.com/2010/03/02/opinion/02herbert.html?scp=7&sq=police%20stop%20frisk%20african%20american%20men&st=cse

12

marked a 4.3 percent increase from the year 2009, and African-American and Latino men accounted for approximately 85 percent of all stops.[3]

82. The particular arrest of Plaintiff is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

83. The Defendants through their actions carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

84. As a result of the aforementioned conduct, the Defendants have violated Plaintiff's constitutional rights to equal protection, and Plaintiff is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

85. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

---

[3] Parascandola, Rocco, "New York Police Department Stopped More than 600,000 in 2010, the Highest Number Ever Recorded, February 22, 2011. Article incorporated herein by reference and available online at: http://articles.nydailynews.com/2011-02-22/news/29442269_1_latino-men-fight-crime-new-yorkers

86. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

87. As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, including physical and mental injuries, loss of liberty, special damages, and deprivation of his constitutional rights.

88. As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:  New York, New York
        August 2, 2016

Respectfully submitted,

_//s//_____
David Thompson [dt3991]
STECKLOW & THOMPSON
217 Centre Street, 6th Floor
New York, New York 10013

Phone: (212) 566-8000  
Fax:     (212) 202-4952  
dave@sctlaw.nyc  
ATTORNEY FOR PLAINTIFF